UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY WARD,<br><br>Defendant. | 5:22-CR-50073-JLV-01<br><br>REPORT AND RECOMMENDATION ON PRO SE MOTION FOR CHANGE OF VENUE (DOC. 52) |

Mr. Ward filed a *pro se* Motion for Change of Venue (Doc. 52) and affidavit in support of his Motion for Change of Venue (Doc. 53).  Because Defendant is represented by counsel, all motions must be made through his attorney.  See United States v. Stanko, 491 F.3d 408, 411 n.2 (8th Cir. 2007) (The court declines to address *pro se* motions when defendant is represented by counsel); United States v. Peck, 161 F.3d 1171, 1174 n.2 (8th Cir. 1998) (It is not the court's "practice to consider *pro se* briefs filed by parties represented by counsel").  Accordingly, on this basis, it is recommended that defendant's *pro se* motion for change of venue (Doc. 52) be denied without prejudice.

Alternatively, the court has reviewed the merits and the motions and for the reasons stated herein, finds the motions to be without merit.

1

## RECOMMENDATION

It is respectfully recommended that Mr. Ward's Motion for Change of Venue (Doc. 52) be denied.

## JURISDICTION

Anthony Ward and Darnell Young are charged in an Indictment with Distribution of a Controlled Substance Resulting in Serious Bodily Injury in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2; and Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).  (Doc. 1).  The pending Motions were referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and United States District Court District of South Dakota's Local Rule (LR) 57.11(B).

## DICUSSION

Mr. Ward does not assert that venue is improper[1] but rather seeks a change of venue due to prejudice caused by the inability for him to receive "a fair trial and an impartial jury pool."  (Doc. 52, pp. 1, 7).  Mr. Ward argues that South Dakota is composed of "2.4% African American;" thus, there is "over a 201% chance that [he'll] get one African American person on the jury panel." Id. at p. 2.  Mr. Ward argues that he faced prejudice due to law enforcement illegally detaining him for 3.5 hours and overall mistreatment with being in

---

[1] Venue is proper as "where a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done." United States v. Rodriguez–Moreno, 526 U.S. 275, 281 (1999) (quoting United States v. Lombardo, 241 U.S. 73, 77 (1916)).  The Indictment alleges that the crime was committed in Rapid City, in the District of South Dakota.  Therefore, venue is proper in the Western Division of the District of South Dakota.

2

"South Dakota both by law enforcement and government personal that the only remedy is to change the venue." Id. at pp. 2-3; Doc. 53.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed...." U.S. Const. amend. VI.

The Sixth Amendment right to a jury trial has been interpreted by the Supreme Court as requiring that grand and petit juries be drawn from a pool that represents a fair cross-section of the community. Id. at p. 538. See Taylor v. Louisiana, 419 U.S. 522, 528 (1975). "Although the Constitution prohibits purposeful exclusion of an identifiable racial group from the juror-selection process, there is 'no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population.'" United States v. Garcia, 991 F.2d 489, 491 (8th Cir. 1993). Therefore, a "defendant has no constitutional right to a representative jury, only to an impartial jury." United States v. Butler, 980 F.2d 733 (7th Cir. 1992) (citing Holland v. Illinois, 493 U.S. 474, 480 (1990)).

In Granillo, a defendant moved for a change of venue arguing that Hispanics would not be adequately represented on his jury, in violation of his right to a trial by a jury of his peers. United States v. Granillo, 288 F.3d 1071, 1076 (8th Cir. 2002). The Eighth Circuit Court of Appeals held that the district court did not abuse its discretion in denying his request for a change of venue based upon the under representation of Hispanics in the Southern District of Iowa, without the showing of further partiality or unfairness. Id.; see also

United States v. Garcia, 836 F.2d 385, 388 (8th Cir. 1987) (rejecting the defendant's challenge to his conviction on the ground that the lack of Mexican–Americans on his jury violated his equal protection rights, where the defendant "gave the court no reason to conclude that lack of significant number of Mexican–Americans on his venire was anything other than the innocent result of a lack of a significant number of Mexican–Americans in the community from which the venire was drawn").

In Cannon, a defendant argued that due to statistical evidence that African Americans constituted 2.17 percent of Minnesota population and .06 percent of North Dakota population that African American defendants would not receive a fair and impartial trial in North Dakota where one of the four drug sales at issue occurred under Rule 21(a), and a transfer of venue was in the interest of justice, Rule 21(b).  United States v. Cannon, 88 F.3d 1495, 1501 (8th Cir. 1996) (reversed on other grounds).  The Eighth Circuit found that the defendant was not entitled to a change of venue on the showing of statistical evidence of the difference in proportions of African Americans alone.  Id.

The Eighth Circuit in Mallett v. Bowersox rejected the argument that prejudice could be inferred from the fact that the jury was drawn from a county with no (or a small number of) members of defendant's race.  Mallett v. Bowersox, 160 F.3d 456, 461 (8th Cir. 1998).  The court further noted that a petitioner must generally show "the actual existence of prejudice to prove he was denied the due process guarantee of a fundamentally fair trial."  Id. at 460 (citing Irvin v. Dowd, 366 U.S. 717, 723 (1961)).

Mr. Ward extensively details the rights he believes have "been violated since he came into contact with officials and Representatives of South Dakota," including being illegally detained for 3.5 hours. (Doc. 53). However, as discussed in this courts report and recommendation (Doc. 91) in response to Mr. Ward's Motion to Suppress (Doc. 38), the stop, arrest, and search were supported by probable cause. Additionally, this court does not find any of Mr. Ward's other allegations of mistreatment to have merit. Therefore, similar to Mallett, Cannon, Granillo, and Garcia where the defendant failed to show "actual prejudice to prove he was denied the due process guarantee of a fundamentally fair trial," the under representation of a specific race was insufficient to require a change of venue. Mallett, 160 F.3d at 460 (citing Irvin, 366 U.S. at 723).

Furthermore, Mr. Ward argues he will not receive a "fair trial and an impartial jury pool." (Doc. 52, pp. 1, 7). "[T]o establish a prima facie violation of the fair-cross-section requirement, the defendant must show: 1) that the group alleged to be excluded is a 'distinctive' group in the community; 2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Duren v. Missouri, 439 U.S. 357, 364 (1979).

"Distinctiveness" under the Sixth Amendment implies more than minority status. The Supreme Court stated that the Sixth Amendment is

5

violated where "large, distinctive groups are excluded from the pool." Taylor, 419 U.S. at 528.  Similarly, the Court stated in Duren that the group in question must be "of sufficient magnitude and distinctiveness[2] so as to be within the fair-cross-section requirement[.]" Duren, 439 U.S. at 370.  The Eighth Circuit Court of Appeals has found that in many communities, African Americans are a distinctive group.  Garcia, 991 F.2d at 491.  Thus, this court finds that Mr. Ward has established that African Americans are a distinctive group in the Western Division of South Dakota.

The second requirement for a Sixth Amendment prima facie case is substantial underrepresentation of the group in question in the source from which grand and petit jurors are drawn.  Duren, 439 U.S. at 364.  The underrepresentation must be so substantial that the jury pool does not fairly represent a cross-section of the community.  Id.  In this case, Mr. Ward does not argue that the representation of African Americans is unreasonable in relation to the number of such persons in the community, only that they are underrepresented in the community.  Therefore, Mr. Ward fails to establish the second element of the prima facie case.

---

[2] "A group of people is distinct when they have a shared attribute that defines or limits their membership, and when they share a community of interest." United States v. Black Bear, 878 F.2d 213, 214 (8th Cir. 1989) (holding that Native American people in South Dakota are distinct and form a cultural community); but see United States v. Sekhon, No. 1:06-CR-139, 2007 WL 4287864 (E.D. MO. 2007) (holding there are "insufficient Asian Indians residing in the Southeastern Division to be statistically significant, Asian Indians are not a 'distinctive' group in that division for purposes of Sixth Amendment analysis.")

The third requirement for a Sixth Amendment prima facie case is that the underrepresentation of African Americans "was due to their systematic exclusion in the jury-selection process." Duren, 439 U.S. at 366. In other words, it must be established that "the cause of the underrepresentation was ... inherent in the particular jury-selection process utilized." Id. Mr. Ward attempts to satisfy this requirement by asserting that as a function of "geography," more correctly, population demographics, African Americans are excluded from the jury selection process. However, there must be something about the jury-selection process itself that causes members of a distinctive group to be included in jury pools in significantly smaller percentages than they exist in the community. See Duren, 439 U.S. at 364, 366-67 (systematic exclusion because defendant demonstrated that state law exempting women from jury selection upon request resulted in underrepresentation of women in every weekly venire for one year). Mr. Ward does not argue that African Americans are excluded from the jury pool because of something "inherent in the particular jury-selection process utilized." Id. at p. 366. Rather, Mr. Ward simply argues that fewer African Americans live here and therefore he is entitled to a change of venue. That is insufficient to establish the third element of the prima facie case.

## **CONCLUSION**

For the reasons discussed above regarding Mr. Ward's inability to show actual prejudice and the lack of ability to establish a prima facie case as detailed under Duren requirements, Mr. Ward has failed to show that he would

7

be denied the right to an impartial jury selected from a fair cross-section of the community if he is tried by a jury chosen from a Western Diversion South Dakota venire. It is respectfully recommended that Mr. Ward's motion to transfer venue (Doc. 52) be denied.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 24th day of January, 2023.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge