UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY WARD,<br><br>Defendant. | 5:22-CR-50073-JLV-01<br><br>REPORT AND RECOMMENDATION ON MOTION TO DISMISS (DOC. 88) |

Anthony Ward filed a *pro se* Motion to Dismiss, "pursuant to the Equal Protection Clause (Selective-Prosecution) of the 5th Amendment," and requested an evidentiary hearing. (Doc. 88).

Because Defendant is represented by counsel, all motions must be made through his attorney. See United States v. Stanko, 491 F.3d 408, 411 n.2 (8th Cir. 2007) (The court declines to address *pro se* motions when defendant is represented by counsel); United States v. Peck, 161 F.3d 1171, 1174 n.2 (8th Cir. 1998) (It is not the court's "practice to consider *pro se* briefs filed by parties represented by counsel"). Accordingly, on this basis, it is respectfully recommended that the Motion to Dismiss be denied without prejudice.

Mr. Ward has repeatedly filed pro se motions while represented by counsel. **The court cautions Mr. Ward that any further motions (with the exception of motions for new counsel) that he files *pro se* while he is**

1

**represented by counsel will likely be denied solely for the reasons set forth above.**

Furthermore, the court has reviewed the merits of the motion and for the reasons stated herein, finds the motion to be without merit. It is respectfully recommended that Mr. Ward's Motion to Dismiss and request for an evidentiary hearing (Doc. 88) be denied.

## JURISDICTION

Anthony Ward was charged in an Indictment with Distribution of a Controlled Substance Resulting in Serious Bodily Injury in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2; and Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). (Doc. 1). The pending Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and United States District Court District of South Dakota's Local Rule (LR) 57.11(B).

## DISCUSSION

Ward argues the Indictment should be dismissed because it is founded on "unethical due process violations, i.e., Selective Prosecution, in which the indictment was based solely on Mr. Ward and Mr. Young's race and a similarly situated individual [C.A.] was not charged in direct violation of the Fifth Amendment of the United States Constitution," specifically his equal-protection rights under the Due Process Clause. (Doc. 88, p. 1).

Ward has four additional arguments within his motion that the court will address. First, Ward argues that his case "appears to be prosecutor's

2

vindictiveness and prejudging a person based solely on a people's prior record with only probable cause based on C.A." (Doc. 88, p. 2). Second, Ward asserts that the court is required to take judicial notice of that fact that "K.S. overdose[d] based on C.A.'s actions." (Doc. 88, p. 3). Third, Ward asserts that "[t]he use of subpar hearsay evidence from third parties has been used to establish a poor case against the defendant(s)," which has resulted in him being "falsely detained without 'probable cause.'" (Doc. 88, pp. 9, 15). Fourth, Ward argues that officers "violated their sworn duty 'to protect and serve,' by allowing C.A. to conduct criminal activities while watching." (Doc. 88, p. 10). This court will address each argument separately.

### I. Selective Prosecution

The Supreme Court has repeatedly held that the government retains broad discretion in determining whom to prosecute. Wayte v. United States, 470 U.S. 598, 607 (1985); United States v. Goodwin, 457 U.S. 368 (1982). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Wayte, 470 U.S. at 607 (quoting Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)).

Prosecutorial discretion is not unfettered. Id. (citing United States v. Batchelder, 442 U.S. 114, 125 (1979)). Prosecutors must abide by the Constitution and cannot selectively prosecute based on "an unjustifiable standard such as race, religion, or other arbitrary classification." Id. (internal

citations omitted). "The Supreme Court has analyzed selective prosecution claims by 'draw[ing] on 'ordinary equal protection standards,' requiring a claimant to demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.' " United States v. Armstrong, 517 U.S. 456, 465 (1996) (internal citation omitted). A defendant claiming selective prosecution bears a heavy evidentiary burden. United States v. Swanson, 509 F.2d 1205, 1208 (8th Cir. 1975); see United States v. Deering, 179 F.3d 592, 595 (8th Cir. 1999) ("Absent a substantial showing to the contrary, governmental actions such as the decision to prosecute are presumed to be motivated solely by proper considerations.").

In order to prevail on a claim of selective prosecution a defendant must show "1) that he has been singled out for prosecution while others similarly situated have not been prosecuted for similar conduct and 2) that the government's action in thus singling him out was based on an impermissible motive such as race, religion, or the exercise of constitutional rights." United States v. Parham, 16 F.3d 844, 846 (8th Cir. 1994); see United States v. Hirsch, 360 F.3d 860, 864 (8th Cir. 2004); Thompson v. United States, 5:16-cv-05035, 2018 WL 8733338, at *45 (D.S.D. Mar. 16, 2018); United States v. Aanerud, 893 F.2d 956, 960 (8th Cir. 1990).

### A. Similarity Situated

"[A] 'similarly situated' person for selective prosecution purposes is one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the

defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan." United States v. White, 928 F.3d 734 (8th Cir. 2019) (quoting United States v. Smith, 231 F.3d 800, 810 (11th Cir. 2000).

Ward argues that he is similarly situated with C.A. because they were all involved in the same drug conspiracy. The Eighth Circuit has repeatedly held that defendants who fail to cooperate with the government are not similarly situated with defendants who do cooperate with the government. United States v. Cain, 487 F.3d 1108, 1115 (8th Cir. 2007) (finding that the defendant was not similarly situated with other defendants in the conspiracy because, unlike the others, he did not cooperate or testify for the government). C.A. was a source of information for law enforcement and was cooperative. Ward was not a source of information nor was he cooperative. Accordingly, he has not established that he was similarly situated with C.A.

**B. Discriminatory Purpose**

The second prong of the selective prosecution prima facie case requires Ward to prove that the government's decision to prosecute him was based on impermissible motives.

Ward claims that the government discriminated against him based on his race. To be successful on this Ward must make a substantial showing that the government acted with a discriminatory intent. Deering, 179 F.3d at 595; United States v. Huff, 959 F.2d 731, 735 (8th Cir. 1992) (denying defendants'

5

selective prosecution claim when the defendants failed to "offer any evidence that the decision to prosecute them was based on their race."). Ward alleges no specific facts as to how the government discriminated against him, aside from the argument that C.A. was not prosecuted for the multiple crimes he committed, while Ward and his co-defendant were "prosecuted for their skin color." (Doc. 88, p. 5). Thus, Ward failed to make the requisite factual showing that the government engaged in selective prosecution.

Ward poses questions regarding C.A.'s statements to officers that C.A., Ward, and Young made approximately five trips from Colorado transporting fentanyl, such as "What car did these trips take place in? Where was Young? Has law enforcement verified that Young was indeed possible to make such trips? Where was Ward? Again, did law enforcement verify that he did in fact make such trips?" (Doc. 88, p. 3). These issues are for a jury to consider, not for the basis for a court to dismiss an Indictment.

Ward argues that the legal doctrine of stare decisis is "obvious[ly] . . . not happening for Mr. Ward or Mr. Young who are prosecuted for their skin color not actual crimes they committed, but an European whom committed multiple crimes is free from prosecution." (Doc. 88, p. 5). The court is unsure what Ward is arguing as stare decisis, Latin for "to stand by things decided," is the legal doctrine that requires a court follows the principles, rules, or standards of its prior decisions (or decisions of higher tribunals) when deciding a case with arguably similar facts.

6

Additionally, Ward failed to resolve the fact that C.A. cooperated with the government and he did not. When a defendant fails to cooperate with the government but others involved in the crime did cooperate, it is difficult to establish a prima facie case for selective prosecution. United States v. Brink, 648 F.2d 1140, 1144 (8th Cir. 1981). Given that Ward failed to show any discriminatory purpose by the government or respond to the difference in cooperation between him and C.A., he has not met his evidentiary showing under prong two of the selective prosecution test.

### C. An Evidentiary Hearing Is Not Required

Ward argues a hearing to examine the prosecution's internal documents should be furnished on his selective prosecution claim. (Doc. 88, p. 16).

"Whether to hold an evidentiary hearing and whether to grant a pre-trial motion to dismiss an indictment are matters within the trial court's discretion." United States v. Kelley, 152 F.3d 881, 885 (8th Cir. 1998) (citation omitted). An evidentiary hearing is not automatically required in a selective prosecution case; rather, "the defendant must present facts 'sufficient to create a reasonable doubt about the constitutionality of a prosecution.'" United States v. Silien, 825 F.2d 320, 322 (8th Cir. 1987) ((citation omitted).

Ward failed to present facts sufficient to create a reasonable doubt about the constitutionality of a prosecution. Thus, this court declines to hold a hearing on Ward's selective prosecution claim.

## II.     Vindictive Prosecution

Ward argues that his case "appears to be prosecutor's vindictiveness and prejudging a person based solely on a people's prior record with only probable cause based on C.A." (Doc. 88, p. 2).

Vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right, which is a violation of due process. United States v. Leathers, 354 F.3d 955, 961 (8th Cir. 2004). The defendant has the burden to demonstrate that the "prosecution was brought in order to punish [him] for the exercise of a legal right," and because of the broad discretion given to prosecutors in performing their duties, the defendant's burden to show vindictive prosecution is "a heavy one." Id.

A defendant can establish prosecutorial vindictiveness through two methods: 1) with "objective evidence of the prosecutor's vindictive or improper motive in increasing the number or severity of charges" or 2) "a defendant may, in rare instances, rely upon a presumption of vindictiveness, if he provides sufficient evidence to show a reasonable likelihood of vindictiveness exists." United States v. Chappell, 779 F.3d 872, 879 (8th Cir. 2015) (internal quotation omitted). In determining whether the presumption of vindictiveness applies we examine "the prosecutor's actions in the context of the entire proceedings." Id. at p. 880 (quotation omitted).

Ward fails to prove prosecutorial vindictiveness under either approach. First, Ward offers no objective evidence in the record that the prosecutor acted in order to punish Ward. Second, Ward failed to provide sufficient evidence to

8

show a reasonable presumption of vindictiveness exists. Therefore, this claim fails to provide relief.

### III. Judicial Notice

Ward asserts "Judicial notice is required here because on March 18, 2022, law enforcement use this[1] fabricated information/evidence to gain access to cell phones based on facts not proven therefore a lack of probable cause." (Doc. 88, p. 3).

Pursuant to Federal Rule of Evidence 201, "[t]he court *may* judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) (emphasis added). The Court may only take notice of an "adjudicatory" fact, not a "legislative fact." Id. "Adjudicative facts are 'facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, [and] their businesses.'" Qualley v. Clo–Tex Int'l, Inc., 212 F.3d 1123, 1128 (8th Cir. 2000) (quoting Fed. R. Evid. 201 advisory committee's note to subdivision (a)). Legislative facts, on the other hand, "are established truths, facts or pronouncements that do not change from case to case but apply universally." United States v. Gould, 536 F.2d 216, 220 (8th Cir. 1976). Adjudicative facts are "simply the facts of a

---

[1] Ward is referring to "K.S.['s] overdose based on C.A.'s actions." (Doc. 88, p. 3)

particular case." Id. (Notes of Advisory Committee). "A high degree of indisputability is the essential prerequisite." Id. (Notes of Advisory Committee).

Ward requests judicial notice be taken on the fact that K.S. overdosed due to C.A.'s actions. This fact is not generally known within the trial court's territorial jurisdiction, nor can it be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Therefore, the court declines to take judicial notice of this fact.

### IV. Probable Cause

Ward asserts that "[t]he use of subpar hearsay evidence from third parties has been used to establish a poor case against the defendant(s)," which has resulted in him being "falsely detained without 'probable cause.' " (Doc. 88, pp. 9, 15). However, the Eighth Circuit Court of Appeals held that probable-cause determinations may be based on hearsay. United States v. Leppert, 408 F.3d 1039, 1042 (8th Cir. 2005). Furthermore, the grand jury found probable cause to indict. (Doc. 1). Therefore, this argument lacks merit.

### V. Police Officer's Conduct

Ward argues that officers "violated their sworn duty 'to protect and serve,' by allowing C.A. to conduct criminal activities while watching as serious as K.S.['s] alleged overdose." (Doc. 88, p. 10).

This argument centers on the idea that if the court finds that the government has engaged in conduct that "shocks the conscience" or violates fundamental fairness, the court may, under the "outrageous government conduct" rule, dismiss criminal charges to prevent a Fifth Amendment due

10

process violation.  United States v. Bugh, 701 F.3d 888, 894 (8th Cir. 2012) (quoting United States v. Russell, 411 U.S. 423, 431–32 (1973) (stating that a court may dismiss an indictment on due process grounds when "the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction").  The Eighth Circuit Court of Appeals recognized that

> [w]hile there may be circumstances in which the conduct of law enforcement agents is so outrageous that due process bars the government from invoking the judicial process to obtain a conviction, United States v. Russell, 411 U.S. 423, 431–32 (1973), "[t]he level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court."

United States v. King, 351 F.3d 859, 867 (8th Cir. 2003) (quoting United States v. Pardue, 983 F.2d 843, 847 (8th Cir. 1993)).  This defense is reserved for conduct that "falls within that narrow band of 'the most intolerable government conduct.' "  United States v. Morse, 613 F.3d 787, 792–93 (8th Cir. 2010); see United States v. Westmoreland, 712 F.3d 1066, 1071 (7th Cir. 2013) (noting the Supreme Court has never barred prosecution due to outrageous conduct); see also United States v. Combs, 827 F.3d 790 (8th Cir. 2016) (recalling two reported court of appeals decisions[2], both from the 1970s, in which the government's conduct was so outrageous as to violate due process).

---

[2] In United States v. Twigg, 588 F.2d 373 (3d Cir. 1978), the Third Circuit concluded that "the governmental involvement ... reached a demonstrable level of outrageousness" when the government provided the informant with everything needed to build a methamphetamine laboratory, including difficult-to-obtain chemicals and land on which to build the laboratory. Id. at p. 380. The defendant incurred no cost in building the laboratory, was subordinate in

11

Ward argues that law enforcement violated their duty by allowing C.A. to conduct criminal activities while watching. Even if this statement is true, it does not grant relief. The government must engage in outrageous conduct, not simply allow it to occur. Therefore, this claim is without merit.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss (Doc. 88) be denied.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 25th day of January, 2023.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge

---

all ways to the informant, and did not even know how to manufacture methamphetamine. Id.
In Greene v. United States, 454 F.2d 783 (9th Cir. 1971), the Ninth Circuit found a due process violation where an undercover agent encouraged the defendants to resume a discontinued bootlegging operation, provided necessary materials, threatened the defendants to accelerate production, and served as the defendants' sole customer. Id. at pp. 786–87. The court overturned the conviction, holding that the government may not "involve itself so directly and continuously over such a long period of time in the creation and maintenance of criminal operations, and yet prosecute its collaborators." Id. at p. 787.