UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>ANTHONY WARD,<br><br>                    Defendant. | CR. 22-50073-01-JLV<br><br><br>ORDER |

## INTRODUCTION

Defendant Anthony Ward, through counsel, filed a motion to suppress. (Docket 38).   Mr. Ward, *pro se*, also filed a number of pretrial motions. (Dockets 52, 88 & 99).   United States Magistrate Judge Daneta Wollmann issued three reports and recommendations addressing defendant's motions. (Dockets 91, 92 & 95).   Mr. Ward, *pro se*, filed an objection and appeal from an order of the magistrate judge.   (Docket 106) (referencing Docket 93).   Mr. Ward, through counsel, filed objections (Docket 109) to one of the reports and recommendations.   (Docket 91).   For the reasons stated in this order the defendant's objection and appeal and the objections to the reports and recommendations are overruled.

## ANALYSIS

*PRO SE* FILINGS

Defendant Anthony Ward, *pro se*, filed an objection and appeal from an order of the magistrate judge.   (Docket 106) (referencing Docket 93).   The

court agrees with the magistrate judge's ruling that Mr. Ward may not file motions *pro se* when he is represented by counsel.   See Docket 93 at p. 1. Mr. Ward is represented by Attorney John Rusch and all motions and other filings associated with the defendant must be filed by Mr. Rusch.   United States v. Stanko, 491 F.3d 408, 411 n.2 (8th Cir. 2007); United States v. Peck, 161 F.3d 1171, 1174 n.2 (8th Cir. 1998).   The same is true with respect to Mr. Ward's *pro se* motion to dismiss "pursuant to the Equal Protection Clause (Selective-Prosecution) of the 5th Amendment" and his *pro se* motion for judicial notice.   (Dockets 88 & 99).

The magistrate judge filed reports and recommendations ("R&Rs") (Dockets 92 (addressing defendant's *pro se* motion for change of venue (Docket 52)) and 95 (addressing defendant's *pro* se motion to dismiss "pursuant to the Equal Protection Clause (Selective-Prosecution) of the 5th Amendment" (Docket 88)).   The deadline for defense counsel's filing of objections to each of these R&Rs was fourteen days.   28 U.S.C. § 636(b)(1).   As to each of these R&Rs, the deadline for filing an objection expired.   The court reviewed the R&Rs and finds they are appropriate resolutions of defendant's *pro se* motions.   On this basis, the reports and recommendations (Dockets 92 & 95) are adopted.

MOTION TO SUPPRESS

Mr. Ward, through counsel, filed a motion to suppress.   (Docket 38). The motion was referred to United States Magistrate Judge Daneta Wollmann pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order of April 1, 2018.

The magistrate judge conducted an evidentiary hearing.   (Docket 76).

Magistrate Judge Wollmann issued a report and recommendation ("R&R").

(Docket 91).   The magistrate judge recommended the defendant's motion be

denied.   Id. at pp. 2 & 34.   Mr. Ward timely filed his objections to the R&R.

(Docket 109).   For the reasons stated below, the defendant's objections are

overruled and the R&R is adopted consistent with this order.

### DEFENDANT'S OBJECTIONS

Mr. Ward objects to the R&R for five reasons, summarized as follows:

1.   Probable cause did not exist based on the traffic violations to
     stop the vehicle;

2.   Probable cause did not exist, independently, to stop the
     vehicle;

3.   Search of the bags in the car was not authorized;

4.   Defendant did not give the keys to the bags to law
     enforcement; and

5.   Defendant's custodial statements required a Miranda[1]
     warning.

(Docket 109).   Each of the defendant's objections will be addressed.

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files a

written objection to the magistrate judge's proposed findings and

recommendations, the district court is required to "make a de novo determination

of those portions of the report or specified proposed findings or recommendations

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

to which objection is made."   Id.   The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.   See also Fed. R. Crim. P. 59(b)(3).   The court completed a *de novo* review of those portions of the R&R and the record before the magistrate judge.   Unless otherwise indicated, the court's findings are consistent with the findings made by the magistrate judge.

## RESOLUTION OF DEFENDANT'S OBJECTIONS

1.   PROBABLE CAUSE DID NOT EXIST BASED ON THE TRAFFIC VIOLATIONS TO STOP THE VEHICLE

The magistrate judge found "there was . . . probable cause to stop the red car based on the violation of two traffic laws."   (Docket 91 at p. 18). According to the magistrate judge, the traffic violations occurred when the vehicle in which Mr. Ward was a passenger,

A.   "[F]ailed to stop before exiting the parking lot" in violation of S.D.C.L. § 32-29.2.2.[2]   Id. at p. 8 & 8 n.14; and

[2]S.D.C.L. § 32-29.2.2 provided in relevant part: "The driver of a vehicle emerging from an alley, building, private road, or driveway within a business . . . district shall stop such vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across such alley, building entrance, road, or driveway, or if there is no sidewalk area, shall stop at the point nearest the street to be entered where the driver has a view of approaching traffic thereon. A violation of this section is a Class 2 misdemeanor."

4

B.    "[F]ailed to stop at a stop sign at the intersection of Rapp Street and Eglin Street" in violation of S.D.C.L. § 32-29-2.1.[3] <u>Id.</u> at p. 8 & 8 n.16.

Mr. Ward asserts "there was no objectively valid basis for the stop." (Docket 109 at p. 2).   Mr. Ward's objection focuses on the fact that the law enforcement officers surveilling the vehicle did not know "who the driver of the car was."   <u>Id.</u> at p. 1.   Because "Trooper Jackson was incorrect in his guess" as to who the driver was, Mr. Ward argues "[g]uessing who the driver may be and pulling the car over was not objectively reasonable."   <u>Id.</u>at p. 2 (referencing <u>United States v. Smart</u>, 393 F.3d 767, 770 (8th Cir. 2005)).

Special Agent Whittle observed the two traffic violations and relayed the information to other officers, including South Dakota Highway Patrol Officer Jackson who executed the vehicle stop.   (Docket 91 at p. 8).   The magistrate judge found "Special Agent Whittle and Trooper Jackson to be credible witnesses."   <u>Id.</u>   Defendant does not challenge the witnesses' testimony or the magistrate judge's credibility finding.

"An officer has probable cause to conduct a traffic stop when he observes even a minor traffic violation.   This is true even if a valid traffic stop is a pretext for other investigation."   <u>United States v. Sallis</u>, 507 F.3d 646, 649 (8th

---

[3]S.D.C.L. § 32-29-2.1 provides in relevant part: "[E]very driver of a vehicle approaching a stop intersection indicated by a stop sign shall come to a full stop at a clearly marked stop line . . . before entering the intersection. . . . A violation of this section is a Class 2 misdemeanor."

Cir. 2007) (internal quotation marks and citations omitted).   Mr. Ward ignores

the principal ruling in Smart.

> A law enforcement officer whose observations lead him or her
> reasonably to suspect that a particular person has been or is about
> to be engaged in criminal activity may stop that person to investigate
> the circumstances that provoke suspicion. . . . Accordingly, Officer
> Nicolino had an objectively reasonable basis to stop Mr. Smart's
> vehicle if he reasonably suspected that Mr. Smart was operating a
> vehicle that did not comply with Iowa traffic laws.

Smart, 393 F.3d at 770.

There is no error in the magistrate judge's analysis or the factual finding

made.   Defendant's first objection to the R&R is overruled.

2.    PROBABLE CAUSE DID NOT EXIST, INDEPENDENTLY, TO STOP
      THE VEHICLE

Prior to concluding the traffic violations warranted the stop of the

vehicle, the magistrate judge found:

> Based on the corroborated information from C.A. coupled with Agent
> Whittle's observations that day, probable cause existed because the
> totality of the circumstances justified the belief that a crime had
> been committed, namely the distribution of fentanyl, and the person
> being seized, Ward, committed it.

(Docket 91 at p. 17) (referencing United States v. Bloomfield, 40 F.3d 910,

915 (8th Cir. 1994)).   Supporting this conclusion the magistrate judge found:

> At a minimum, reasonable suspicion to stop the red car is present
> as the officers were aware of "particularized, objective facts," namely
> the information confirmed from C.A. combined with the observations
> on the day of arrest, "which, taken together with rational inferences
> from those facts, reasonably warrant suspicion that a crime is being
> committed," specifically the distribution of fentanyl.

Id. at p. 17 n.22 (citing Bloomfield, 40 F.3d at 915).

Mr. Ward challenges the probable cause finding of the magistrate judge. (Docket 109 at p. 2).   After summarizing the testimony relied upon by the magistrate judge, Mr. Ward protests that he "had no way to challenge this alleged information as he has yet to be provided a copy of C.A.'s debrief."   Id. at pp. 2-3.   He requests the opportunity "to review the debrief of C.A. and supplement the record as it is central to the determination of whether there was an independent basis for pulling over the vehicle."   Id. at p. 3.

At no time prior to or during the suppression hearing did defense counsel[4] seek access to the law enforcement summary or a copy of a statement of C.A.'s debrief.   See Docket 84 passim.   The court is not going to reopen the record to permit the defendant to expand the breadth of the hearing or his cross-examination of the witnesses who testified at the suppression hearing. The magistrate judge permitted defense counsel complete access to the record to conduct his examination of law enforcement during the suppression hearing. See Docket 84 at pp. 20, 47, 67 & 96.

The magistrate judge found "C.A. provided Information that was 'independently corroborated' via the officer's investigation."   (Docket 91 at p. 16).   Coupled with the other investigative information developed over the several-week investigation, the magistrate judge concluded "[p]robable cause for stopping the vehicle existed on the basis of the drug investigation alone."

---

[4]Mr. Ward was represented by another member of the Criminal Justice Act at the time of the suppression hearing.   (Docket 84 at p. 1).

Id.  "To support a probable cause determination, officers may rely on an informant's tip if the informant has provided reliable information in the past or if his tip is independently corroborated."   Id. (citing United States v. Hambrick, 630 F.3d 742, 747 (8th Cir. 2011)).   The magistrate judge proceeded to articulate the corroboration evidence which was developed during the investigation.   Id. at pp. 16-17.

There is no error in the magistrate judge's analysis or the factual finding made.   Defendant's second objection to the R&R is overruled.

3.    SEARCH OF THE BAGS IN THE CAR WAS NOT AUTHORIZED

The magistrate judge found "probable cause to search the vehicle existed even prior to the vehicle being stopped based on the drug investigation, as there was belief, under a common-sense standard, that contraband may be found in the vehicle."   (Docket 91 at p. 30) (referencing Texas v. Brown, 460 U.S. 730, 742 (1983).   The magistrate judge also found that under the automobile exception to the search warrant requirement the "Officers had probable cause to search the vehicle based on the finding of marijuana on Ward's person and the initial drug investigation, as the totality of the circumstances suggested that the vehicle contained contraband."   Id. at p. 27.

Mr. Ward objects to these findings arguing he "was unreasonably seized during the traffic stop and the seizure caused an unlawful search."   (Docket 109 at p. 4) (referencing United States v. Wise, No. 4:20-CR-40104- 02, 2022 WL 1085303, at *8 (D.S.D. Jan. 28, 2022) (citing United States v. Davis, 943

8

F.3d 1129, 1132 (8th Cir. 2019)).   Mr. Ward also contends the length of his detention was extended based on Trooper Jackson's initial "reasonabl[e] belief that the driver may have been under the influence of an unknown substance; however, after further investigation he determined she was not."   Id.

First, in analyzing Mr. Ward's objection, he fails to acknowledge that his detention was extended because of the defendant's attempts to mislead law enforcement by giving three false names, and the officers' efforts at determining his true identity.   See Docket 91 at pp. 9-11.   The magistrate judge properly concluded defendant's "failure to provide a correct name expanded the scope of the investigation."   Id. at p. 27.

The magistrate judge properly analyzed defendant's right to claim a privacy interest in the contents of the vehicle and the bags, in particular.   Id. at pp. 19-23.   "Ward lacks standing to challenge the search because he failed to establish his burden that he 'had a legitimate expectation of privacy in' the red car. . . . [And] Ward's claimed ownership over the suitcase where some of the contraband was taken from is also insufficient to give rise to a legitimate and reasonable expectation of privacy."   Id. at p. 22 (citing United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994) and referencing United States v. $32,780.00 in United States Currency, No. 8:15CV131, 2015 WL 13732188 (D. Neb. Sept. 30, 2015)).

The magistrate judge resolved the search issue by proper citation to case authorities.

> If probable cause exists in support of the automobile exception, the search may encompass the entire passenger compartment of the automobile, its trunk, and all containers, packages, and compartments located in the vehicle so long as there is probable cause to believe that the object of the search may be found there.

Id. at p. 29 (referencing United States v. Caves, 890 F.2d 87, 90 (8th Cir. 1989); United States v. Englehart, 811 F.3d 1034, 1042 (8th Cir. 2016)).

Defendant's third objection to the R&R is overruled.

4.   DEFENDANT DID NOT GIVE THE KEYS TO THE BAGS TO LAW ENFORCEMENT

The magistrate judge summarized the testimony of Trooper Gamber and Mr. Ward regarding the bags found in the vehicle.   (Docket 91 at pp. 11-12). While Trooper Gamber was preparing for a search of the vehicle, Mr. Ward announced that " 'one of the bags in the car[] has some money' of his" which Mr. Ward asked to go get out of one of the two bags.   Id. at p. 11.   When asked "what money" by the officer, Mr. Ward "advised the money was under lock and key, and he had the keys on his person."   Id.   Mr. Ward wanted "to get out of the patrol vehicle and get his key to unlock the bag."   Id. at pp. 11-12.   He then explained "that the bag was actually under a combination code and that he was unwilling to give [the code] to [the] officers."   Id. at p. 12. When searching the trunk of the car, "officers 'located multiple bags with multiple . . . locks on them. . . . The keys located on [Mr. Ward] opened the bags' locks."   Id. at p. 12.

Mr. Ward objects to this finding.   (Docket 109 ¶ 4).   He argues the "keys were on a separate key chain than the Defendant's keys and the presumption of the officers at that time was that the bags belonged to Brittany Brazile as they allowed her to take the bags with her when she drove away from the stop." Id. at pp. 4-5.

A former South Dakota State Highway Patrol officer, Tyler Jackson, testified at the suppression hearing.   (Docket 84 at pp. 101:17-102:11). Trooper Jackson testified that once the two bags were locked in the trunk of the car, he "searched one and Trooper Gamber searched the other."   Id. at pp. 117:25-118:2.   He described that the bag he searched had "a large amount of locks in an attempt to prevent someone from easily opening it."   Id. at p. 118:3-5.   Trooper Jackson did not use a key but rather he punctured "one of the prongs [of the zipper] and you can easily unlock the whole thing."   Id. at p. 118:7-9.   Inside the bag, Trooper Jackson found a small safe.   Id. at p. 118:19-20.   Using a key Trooper Gamber got from Mr. Ward, Trooper Gamber opened the safe which contained "approximately 36 10-milligram dosages of Suboxone, and then $2,859 in U.S. currency, and then an unknown capsule, and then several other M30 pills."   Id. at p. 118:23-25.

When Trooper Gamber searched Mr. Ward, among other things the officer found "some keys."   Id. at p. 144:13-25.   Trooper Gamber took the keys off Mr. Ward.   Id. at p. 145:1-6.

11

The officers never asked the occupants of the vehicle which one of them owned the bags.   Id. at p. 154:11-17.   There were no identifying tags or labels on the bags.   Id. at p. 154:18-22.   Located in one of the bags were "testosterone supplements and male garments."   Id. at p. 154:22-23.

The factual summary of the R&R is consistent with the law enforcement officers' testimony.   Defendant's fourth objection to the R&R is overruled.

5.    DEFENDANT'S CUSTODIAL STATEMENTS REQUIRED A
      MIRANDA WARNING

The magistrate judge found the statements made to law enforcement by Mr. Ward "were spontaneous and not the result of an interrogation."   (Docket 91 at pp. 32-33).   The only statements made by Mr. Ward occurred while he was detained in the back of Trooper Gamber's patrol car.   Id. at p. 33.   Those statements were captured on "Trooper Gamber's dashcam video."   Id.   With this finding, the magistrate judge concluded all of Mr. Ward's "statements were spontaneous and not the result of interrogation; therefore, Miranda warnings were not required.   Thus, no Fifth Amendment violation occurred."   Id. at p. 34.

Mr. Ward objects to the finding of the magistrate judge as he claims his "spontaneous statements were clearly the result of him offering answers to questions asked of him earlier in the detention."   (Docket 109 at p. 5).   He argues "[h]is response to questions earlier asked by law enforcement still

amount to [a] custodial interrogation in that [defendant's statements] bear directly on the topics inquired into by law enforcement during the stop." Id. He concludes "[t]he fact that the question is not immediately preceding these statements is not determinative of whether they should be excluded." Id. Finally, Mr. Ward asserts during "this routine traffic stop" law enforcement had "no basis . . . to require him to provide his name." Id.

First, Mr. Ward's assertion that he was a passenger in the vehicle and law enforcement had no right to ask his name is misplaced.  Trooper Gamber was entitled to ask for Mr. Ward's identification.  United States v. Slater, 411 F.3d 1003, 1005 (8th Cir. 2005) ("A recent Supreme Court decision confirms that Officer Perry's request for Slater's identification did not violate the Fourth Amendment even if it was unrelated to the sobriety stop."  (referencing Muehler v. Mena, 544 U.S. 93 (2005)).  See also United States v. Foster, 15 F.4th 874, 878 (8th Cir. 2021) ("Officer Johnson did not unlawfully expand the scope or extend the stop when he asked for identification from the occupants of the vehicle.").

When first entering Trooper Gamber's patrol car, the dialogue between the officer and Mr. Ward focused on the confusion regarding the defendant's name.  Suppression Hearing Exhibit 1 at 21:50-28:00.  Trooper Gamber then left his vehicle and did not return until about 42 minutes later.  Id. at 1:00:00. Upon his return to the car, the officer asked Mr. Ward "are you o.k.?"  Id. at

13

1:05:00.   Mr. Ward asked to have the handcuffs adjusted.   Id. at 1:05:00-

1:05:40.   Once that issue was resolved, Mr. Ward asked:

> Ward:      Are you takin' the bags?   Or what's goin' on?
>
> Gabler:    Just one second.
>
> Ward:      Can I just take the bags?
>
> Gambler:   No.
>
> Ward:      I can't take the bags?
>
> Gambler:   No

Id. at 1:05:42-1:06:20.

At that point, Trooper Gamber asked a question about the name "Morris"

which was apparently present in or around one of the black bags.   Id. at

1:06:21-1:06:25.   Mr. Ward responded that Morris was his cousin and that the

name was associated with the black bag with all the pills in it.   Id. at 1:06:30-

1:06:37   He then claimed in essence that he had no reason to lie.   Id. at

1:06:38-1:06:46.

A few moments later, Mr. Ward started another conversation with

Trooper Gamber.

> Ward:      You guys are leaving the bags here?
>
> Gamber:    I'm sorry?
>
> Ward:      You're leaving the bags here?
>
> Gamber:    The bags are going to be left in the car.
>
> Ward:      Why would you leave my bags here?

14

| Gamber: | We're not going to bring two duffel bags into the jail. |
|---|---|
| Ward: | I have nobody here so |
| Gamber: | I know you have a lot of questions but we're just going to hang out here and I'm going to have a couple guys come talk to you.   That's where we're at right now.   Sorry . . . [silence] I'm not going to talk to you any more about this case.   O.k.? |
| Ward: | I understand what you guys are doing, but all I'm askin' is to at least let me take my stuff. |
| Gamber: | We found the weed so |
| Ward: | If you're charging me with the weed, the weed I'll take the charge or whatever . . . [silence] But what I'm saying I would like my stuff. |

1:07:18-1:08:36.   Without responding to Mr. Ward's comment, Trooper

Gamber left the car and did not return for approximately 14 minutes.   Id. at

1:08:10-1:26:15.

When Trooper Gamber reentered the vehicle, Mr. Ward immediately

started asking questions again.

| Ward: | Would you let me get my bags?   I'm going to need my property. |
|---|---|
| Gamber: | What? |
| Ward: | That's my property, I'm going to need my property.   I'm going to need that, I'm not from here. |

Id. at 1:26:15-1:26:48.   Again, Trooper Gamber did not respond to Mr. Ward's

demand.   At that point the trooper's dashcam shows a woman in a red shirt in

15

handcuffs being escorted to a second Highway Patrol vehicle which was parked in front of Trooper Gamber's car.   Id. at 1:26:50-1:26:48.

Once again, Trooper Gamber exited his vehicle and did not return for about 13 minutes.   When he got back into the car, Mr. Ward, without prompting or any questioning from the trooper, started another conversation.

| | |
|---|---|
| Ward: | Are my keys in there?   My house keys and all that stuff? |
| Gamber: | What? |
| Ward: | My keys, my housekeys. |
| Gamber: | Oh, ya. |
| Ward: | And those are my bags. |
| Gamber: | What about the big chunker keys? |
| Ward: | How are my housekeys evidence? |
| Gamber: | [No response] |
| Ward: | Am I getting my bags? |
| Gamber: | The bags are staying in the car for the ride home. |
| Ward: | Why would my bags stay in the car?   That's my property. |
| Gamber: | We're not takin' your property with |
| Ward: | So when I get out of jail how will I get my stuff? |
| Gamber: | You're goin' to have to get ahold of |
| Ward: | How am I goin' to get my money? |
| Gamber: | Your money's being [inaudible] |

16

| | |
|---|---|
| Ward: | My money's being what? |
| Gamber: | Your money's being seized pending forfeiture.   We'll talk about all that–first things first. |

Id. at 1:39:55-1:40:55.   As the trooper prepared to move his vehicle, he asked

Mr. Ward if he wanted his seatbelt fastened.   As the officer can be heard

engaging the seatbelt, Mr. Ward asks "so, am I going to get a receipt for my

money then?" and Trooper Gamber replies "yup."   Id. at 1:41:00-1:42:05.

  While enroute to the Division of Criminal Investigation's office, Mr. Ward

again engaged Trooper Gamber.

| | |
|---|---|
| Ward: | So, what are my charges? |
| Gamber: | One second–we've got a stack of them here.   Right now I'm bringing you to talk to an investigator–so we're going to figure that out.   Give me a little bit, o.k. man. |
| Ward: | There's really nothing to charge me with.   I will beat all the charges in court. |
| Gamber: | O.k. |
| Ward: | I'm confident in this.   I know the law.   It was an illegal search and seizure.   You had no warrant to obtain anything that was in that bag.   There was a lock on the bag.   Once you open that lock, under the fourth amendment rule there is no evidence.   That's called fruit of the poisonous tree.   Res judicarta [sic], collateral estoppel.   I'm very well known about what I do.   Only thing is, in the end I'll file a bunch of complaints and people will lose their jobs.   Like I've done this in several other states, that's it. |

Id. at 1:42:07-1:43:50.

At that point, Trooper Gamber turned his vehicle on to the access ramp on I-90 and the next four minutes on the audio are silent.   Id at 1:43:53-1:47:03.   While driving westward on I-90, Mr. Ward asked:

> Ward:   Are you guys required to wear bodycams?
>
> Gamber:   What?
>
> Ward:   Are you guys required to wear bodycams?
>
> Gamber:   Do I have a bodycam?
>
> Ward:   Yes.
>
> Gamber:   I have a dashcam with a body mic.

Id. at 1:47:05-1:48:18.   From that point on, there was silence in the patrol car.

"[T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent."   Rhode Island v. Innis, 446 U.S. 291, 300–01 (1980).   "That is to say, the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."   Id. at 301.   "The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.   This focus reflects the fact that the Miranda safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police."   Id.   "A practice that the

18

police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation." <u>Id.</u>  "But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." <u>Id.</u> at 301-02.

"Miranda does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." <u>Butzin v. Wood</u>, 886 F.2d 1016, 1018 (8th Cir. 1989) (internal quotation omitted).  <u>Miranda</u> "does not preclude admission of statements that a defendant in custody volunteers and that are not the product of any interrogation by the police." <u>United States v. Waloke</u>, 962 F.2d 824, 829 (8th Cir. 1992) (referencing <u>Innis</u>, 446 U.S. at 299-301).

"Voluntariness remains the standard for the admissibility of confessions." <u>United States v. Jorgensen</u>, 871 F.2d 725, 729 (8th Cir. 1989) (referencing <u>Brown v. Mississippi</u>, 297 U.S. 278, 279 (1936) (the use of involuntary confessions violates due process).  "The test used to apply this constitutionally based standard is whether, in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will." <u>Id.</u> (referencing <u>Haynes v. Washington</u>, 373 U.S. 503, 513-14 (1963); <u>Culombe v. Connecticut</u>, 367 U.S. 568, 602 (1961) ("Is the confession the product of an essentially free and unconstrained choice by its maker?").  "The [United States

Court of Appeals for the] Eighth Circuit has also embraced the 'overborne will' doctrine."   Id. (referencing Rachlin v. United States, 723 F.2d 1373, 1377 (8th Cir. 1983)). "Two factors must be considered in the voluntariness inquiry: the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess."   Id.   "That a law enforcement officer promises something to a person suspected of a crime in exchange for the person's speaking about the crime does not automatically render inadmissible any statement obtained as a result of that promise."   United States v. Walton, 10 F.3d 1024, 1028 (3d Cir. 1993).

"[V]oluntariness of a confession does not depend solely upon whether it was made in response to promises.   Instead, we must determine voluntariness by judging the totality of the circumstances."   Id.   "The question in each case is whether the defendant's will was overborne when he confessed."   Id. (internal citation omitted).   "The burden is on the government to establish, by a preponderance of the evidence, that a challenged confession was voluntary." Id.

It is evident from listening to the audio and the context of Mr. Ward's statements and Trooper Gamber's statement "I'm not going to talk to you about this case" that the officer did not want to talk to Mr. Ward and did not conduct an interrogation.   The officer did nothing to encourage Mr. Ward to speak. The trooper's inquiries in response to Mr. Ward's statements were not the types of "compelling influences, psychological ploys, or direct questions" which would

20

violate the defendant's Fifth Amendment rights.   Louisell v. Director of Iowa Department of Corrections, 178 F.3d 1019, 1023 (8th Cir. 1999) (citing Arizona v. Mauro, 481 U.S. 520, 529 (1987)).

Under the totality of the circumstances, Mr. Ward's statement was voluntarily made without "any direct or implied promises, coercive tactics or threats."   Rachlin, 723 F.2d at 1378 (8th Cir. 1983).   See also Jorgensen, 871 F.2d at 729.

Defendant's fifth objection is overruled.

## ORDER

Based on the above analysis, it is

ORDERED that the defendant's objections (Docket 109) are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 91) is adopted.

IT IS FURTHER ORDERED that defendant's motion to suppress (Docket 38) is denied.

IT IS FURTHER ORDERED that the report and recommendation (Docket 92) is adopted.

IT IS FURTHER ORDERED that defendant's motion (Docket 52) is denied.

IT IS FURTHER ORDERED that the report and recommendation (Docket 95) is adopted.

IT IS FURTHER ORDERED that defendant's motions (Dockets 88 & 99) are denied.

IT IS FURTHER ORDERED that defendant's *pro se* objection and appeal (Docket 106) is denied.

A scheduling order will be entered.

Dated May 26, 2023.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE

22