UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY WARD,<br><br>Defendant. | 5:22-CR-50073-JLV-01<br><br>SUPPLEMENTAL REPORT AND RECCOMEDNATION ON MOTION TO DISMISS FOR BRADY VIOLATIONS (DOC. 140) |

On October 24, 2023, Ward filed a motion to dismiss for failure to preserve evidence. (Doc. 140). This court denied his motion and issued a report and recommendation on November 1, 2023. (Doc. 151). Ward filed an appeal and objection to the report and recommendation. (Doc. 172).

An evidentiary hearing was held on November 16, 2023, to allow the parties to offer testimony to give more clarity, specifically the issues of what was seized and what was put into evidence.[1] `

The credible evidence establishes that five of Ward's phones were placed into evidence. Exhibit 2. Ward testified that he had 6 phones on his person and 6 phones from the vehicle, making a total of 12 phones, that were all

---

[1] Exhibit two was received into evidence and is a list of all the items placed into Rapid City evidence from the Anthony Ward traffic stop. Exhibit three was received into evidence, which is a packet of photos of the items found in the car.

1

seized by law enforcement. (Hearing & Doc. 172, p. 1). He stated he bought some of the phones from a homeless person the morning of his arrest. Ward specifically states he had a Samsung Galaxy Ultra 2, in which he recorded the initial stop, that went missing. (Doc. 172, p. 1; Hearing).

Ward also argues he had receipts from various locations in his car that are now missing. These receipts include hospital[2] and court paperwork. His hospital paperwork detailed his hospitalization in Memphis for his collapsed lung.[3] The court paperwork included a permission to travel slips because he is facing "domestic violence, possession and another charge." Ward argues he cannot be convicted of the crimes in the indictment because during some of those dates he was out of the state.[4] Ward testified he has not tried to access information from his bank because he did not have his credit card or ID; he only had cash.

The court had an opportunity to observe Ward's testimony on a number of topics during the November 16, 2023, evidentiary hearing. The court does not find Ward to be a credible witness for several reasons. Ward gave evasive answers and provided illogical explanations regarding the number of cell phones he was carrying, the purpose of the cell phones, and where he acquired the cell phones. For example, Ward said in exhibit 7, the bag in his left hand

---

[2] Ward was asked what kind of medical facility he was in. Ward responded, "for reasons dealing with other matter [he] will take the fifth on that." The court directed Ward to answer; Ward answered the question.
[3] Ward asserts he was hospitalized from January 14, 2022, through February 27, 2022.
[4] Ward filed alibi of his travels. (Doc. 180).

2

was his and in his right hand was his cousin's bag.[5] When asked who his cousin is, he declined to answer. The court directed him to answer, and advised him of the possible penalties, including the possibility that he could be held in contemp. Ward refused to answer the question. Additionally, his testimony regard how he met his traveling companions, who the black duffel bags he was seen carrying belonged to, and details regarding his alleged prior cross country travel, was equally illogical. Furthermore, Ward claimed he had never been convicted of any crimes. On cross he admitted he been convicted of misdemeanor crimes. He also admitted he had numerous drug distribution type crimes pending out of the State of Colorado when he was arrested for this crime. During his March 23, 2022, traffic stop, Ward lied to law enforcement by providing a false name and was only later identified by his fingerprints. The court finds that Ward is not a credible witness and rejects the entirety of his testimony.

The court finds Trooper Jackson's testimony to be credible. Tropper Jackson gathered the evidence from the vehicle; he took items that were pertinent to the arrest or the overall investigation. Multiple officers testified that they had no ill intent in not taking the bags from the vehicle.

Even assuming *arguendo*, seven additional phones and the contents of the bags, including receipts were not preserved into evidence, Ward has not met his burden of establishing the items had "an exculpatory value that was

---

[5] Because Ward asserts that only one bag was his, the issue of standing remains.

3

apparent before the evidence was destroyed." United States v. Tyerman, 701 F.3d 552, 560 (8th Cir. 2012) (quoting California v. Trombetta, 467 U.S. 479, 489 (1984)).  To sustain a Brady claim, Ward must do more than make a "[m]ere speculation that materials may contain exculpatory evidence[.]" United States v. Wadlington, 233 F.3d 1067, 1076-77 (8th Cir. 2000) (quoting United States v. Van Brocklin, 115 F.3d 587, 594 (8th Cir. 1997)); see Trombetta, 467 U.S. at 488 ("Whatever duty the Constitution imposes . . . to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense.").

    Ward argues the receipts are exculpatory because it shows his travel and proves he was not in South Dakota during the dates alleged in the conspiracy. However, Ward's presence in the State of South Dakota is not required in order for him to be convicted of being a part of a drug conspiracy.  Before the receipts were destroyed, the evidentiary value was unclear.  Even now, the receipt's evidentiary value is unclear to the court.  Ward has not met his burden of showing the receipt's evidentiary value was exculpatory.

    Ward's claim that the seven cellphones and other items lost were exculpatory is wholly conclusory.  Such speculation is insufficient to establish a Brady violation.  See United States v. Agurs, 427 U.S. 97, 109–10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.").  Ward has not offered additional evidence which changes the court's decision from the first report and

4

recommendation. It still remains true that despite Ward's unsupported claims that the evidence in the car would have been exculpatory, the actual evidentiary value is unknown.

Because Ward is only able to establish a potentially useful value, he must "show bad faith the part of the police[.]" Id. (quoting Arizona v. Youngblood, 488 U.S. 51, 58 (1988)). During the evidentiary hearings and throughout the evidence as a whole, Ward has not established any bad faith on part of the police to not preserve the items. Tropper Gamber testified that officers "try to figure out what's important" in the car; they cannot "put everything in the car into evidence because of procedure wise evidence ends up getting full. If everybody was able to do that, we wouldn't have a building big enough to do it." Further, most of the fentanyl was not found in the bags, they were found "Directly in front of where Mr. Ward was sitting in the seat back." The evidence establishes that officers took the items that they believed had evidentiary value. Ward failed to make any showing of bad faith; thus, the courts recommendation remains the same: his motion should be denied.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that Ward's objection to the report and recommendation (Doc. 172) be denied.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact.

Objections must be timely and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 22nd day of November, 2023.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge