UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY WARD,<br><br>Defendant. | 5:22-CR-50073-KES-1<br><br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AND DISMISSING MOTION |

Defendant, Anthony Ward, filed a *pro se* motion to suppress and he requested a *Franks* hearing. Docket 161. The United States opposed the motion and filed a response. Docket 169. Magistrate Judge Daneta Wollmann recommended that Ward's motion be denied. Docket 194. Ward timely filed objections to Magistrate Judge Wollmann's report and recommendation. Docket 228. The court adopts Magistrate Judge Wollmann's complete and well-analyzed report and recommendation and addresses the issues raised by Ward in his objections.

**STANDARD OF REVIEW**

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 59 of the Federal Rules of Criminal Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Because motions to

suppress are considered dispositive matters, objections to a magistrate judge's recommendation regarding such a motion are subject to de novo review. 28 U.S.C. § 636(b)(1). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## STATEMENT OF FACTS

In December of 2021 and January of 2022, Pennington County Sheriff Investigator Patrick Rose received information that two African American men, including a man named Low, were staying at the Motel 6 in Rapid City and were in possession of fentanyl pills and firearms. Docket 84 at 5–7. On March 15, 2022, law enforcement received a report that Kyle Seid had suffered a nonfatal fentanyl overdose. Docket 84 at 8–9, Docket 178 at 4. Seid's girlfriend provided a phone to law enforcement officers that contained messages showing that Seid bought the fentanyl from Chavis Anderson. Docket 84 at 9. Seid admitted to purchasing the fentanyl from Anderson and an African American man named Low. *Id.* at 9–10.

On March 21, 2022, Anderson was interviewed by police following a traffic stop. *Id.* at 10. He informed police that he had returned from Colorado the previous week with two African American men named Low and Joe, who brought 1,000 fentanyl pills with them from Denver to Rapid City. *Id.* at 10–11. Anderson told police that he believed Joe was staying at the Hampton Inn along with a woman with purple hair. *Id.* at 12–14. South Dakota Division of

2

Criminal Investigation Special Agent Jakob Whittle spoke with Hampton Inn staff, who told him that a woman with purple hair was staying in a room with an African American man with a Colorado phone number. *Id.* at 14. On March 22, 2022, law enforcement began surveilling the man and woman who Hampton Inn staff told them about. *Id.* at 15.

The surveillance operation culminated in a traffic stop on March 23, 2022. *See id.* at 147. A car driven by the woman with purple hair, Brittany Brazile, and containing Ward and a third woman as passengers, failed to stop completely when it exited the Hampton Inn parking lot. *Id.* at 62–63. During the traffic stop, Ward gave several false names. *See id.* at 138–44. Ward was arrested for false impersonation after admitting that people call him Joe. *See id.* at 116, 143–44. Ward was searched incident to arrest and marijuana was found on his person. Officers searched the vehicle and found a crystalline substance and fentanyl pills in the center console. *See id.* at 117, 145. Ward asked about some cash that belonged to him and requested to get it out of a locked container in the trunk. *Id.* at 146. Officers found keys on Ward's person and located bags and locked safes in the trunk of the car that contained fentanyl pills, suboxone, methamphetamine, a firearm, and $ 2,859 in cash. *See id.* at 118, 146; Docket 178 at 6. Later that day, Officer Rose submitted an affidavit in support of a request for a search warrant seeking to search six cell phones that were found during the stop. *See* Docket 178.

## DISCUSSION

There is a "presumption of validity with respect to [an] affidavit supporting [a] search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). But where the defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause," then the defendant is entitled to an evidentiary hearing on the validity of the warrant. *Id.* at 155–56. If the defendant "proves by a preponderance of the evidence that (1) a law enforcement officer knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit, and (2) without the false statement, the affidavit would not have established probable cause[,]" the search warrant must be voided, and the fruits of the search suppressed. *United States v. Neal*, 528 F.3d 1069, 1072 (8th Cir. 2008) (citing *Franks*, 438 U.S. at 155–56). "This rationale also applies to information that the affiant deliberately or with reckless disregard for the truth omits from the affidavit such that the affidavit is misleading and insufficient to establish probable cause had the omitted information been included." *Id.*

Magistrate Judge Wollmann found that Ward was not entitled to a *Franks* hearing. Docket 194. Ward now objects to Magistrate Judge Wollmann's report and recommendation on seven grounds. Docket 228.

First, Ward argues Magistrate Judge Wollmann "erred in the first aspect of the affidavit in which law enforcement stated they saw CA [Chavis Anderson] with two African Americans in January with CA." Docket 228 at 1. In his initial

4

motion, Ward challenged as a reckless falsehood that "law enforcement saw . . . the defendant and took pictures in January of 2022 to prove he as CA or knew CA." Docket 161 at 12. Magistrate Judge Wollmann's report and recommendations found that the affidavit does not reference law enforcement taking photographs at any time. *See* Docket 194 at 3. Ward responds by conceding that it was error on his part, and he was referring to testimony from the November 2, 2022, suppression hearing in which Agent Whittle testified that law enforcement had photos of Anderson with two African American men. *See* Docket 228 at 1–2.

Magistrate Judge Wollmann was correct that the affidavit does not discuss photographs taken by law enforcement. *See generally* Docket 178 at 1–11. Moreover, law enforcement did not assert in the affidavit that they saw African American men with Chavis Anderson, but rather that they encountered a source of information who advised them that Anderson had been staying at the Motel 6 with an African American man named Low. *Id.* at 3. Ward in his objection does not allege that a false statement was included in the affidavit; moreover, if there were photos of Anderson with two African American males in January, the omission of this information would not render the affidavit misleading because those photos would only corroborate the affidavit's narrative.

Ward also argues that because a source of information relied upon in the affidavit received information secondhand, not mentioning the secondhand nature of the source's information in the affidavit constitutes a reckless

5

omission. "[T]he complete omission of known, highly relevant, and damaging information" about an informant's credibility from an affidavit can mean that a *Franks* hearing is appropriate. *See United States v. Glover*, 755 F.3d 811, 817, 821 (7th Cir. 2014). Here, the affidavit disclosed prior convictions and substance abuse history that might impair the source's credibility. *See* Docket 178 at 3–5. Moreover, the information the source provided was corroborated by phone subscriber information for Anderson's phone obtained by law enforcement. *See* Docket 78 at 7–8, 53–54.

Ward has not made a substantial preliminary showing that the failure to include reference in the affidavit to the purported photographs of the two African American men staying with Anderson at the Motel 6 constitutes a reckless omission. Ward has also not shown that omission of information about the informant's credibility constitutes a reckless omission. Thus, Ward's first objection to Magistrate Judge Wollmann's Report and Recommendation is denied and no *Franks* hearing is required on this ground.

Second, Ward generally disputes references to Seid's overdose in the affidavit. *See* Docket 228 at 3–6; *see also* Docket 198 at 2. Ward argued in his original motion that Seid did not overdose or suffer injuries from an overdose. Docket 161 at 13. The court finds that Investigator Rose's testimony that Seid was administered Narcan at the time of the overdose corroborates the information in the affidavit. *See* Docket 84 at 9; 178 at 4. Moreover, contrary to what Ward asserts in his motion and objections, the affidavit does not rely on a medical diagnosis that Seid overdosed. *See* Docket 178 at 5–6. Rather, it

6

described the overdose as part of a narrative in which law enforcement obtained the information about "Joe" that led Ward's arrest. *See id.* Thus, Ward fails to make a preliminary showing of a false statement or omission in the affidavit relating to Seid's overdose. Ward's second objection is denied.

Third, Ward asserts that he is entitled to a *Franks* hearing because the affidavit failed to mention statements given to law enforcement that indicate that the "Joe" law enforcement was made aware of by informants does not match Ward's description. *See* Docket 227 at 7–9. It is unclear from Ward's objection what statements he is referring to. In Ward's original motion, he argued that law enforcement falsely asserted that they "had three sources of information that provided and clarified that the defendant was indeed the alleged 'Joe.'" Docket 161 at 13.

"Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *Kleinholz v. United States*, 339 F.3d 674, 676 (8th Cir. 2003) (quoting *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000)). Even if the "Joe" law enforcement was made aware of by informants did not match Ward's description, other facts alleged by the affidavit, including the large quantity of fentanyl and other narcotics found in the vehicle, established a fair probability that the cell phones in the car contained evidence. *See* Docket 178 at 6. Ward has not made a preliminary showing that information about Joe's description was omitted "such that the

affidavit is misleading and insufficient to establish probable cause." *Neal*, 528 F.3d at 1072. Thus, no *Franks* hearing is required on this ground.

Fourth, Ward argues that omission of more detailed information about what was found in the car when he was arrested constitutes a reckless falsehood entitling him to a *Franks* hearing. See Docket 228 at 9–10. He argues that "by omitting . . . that the items were found in the car, without establishing which bags is an act of bad faith . . . because the statements make [it] seem as if [the contraband was] his without a direct link to which bag they came out of." *Id.* The court has reviewed the warrant affidavit and finds it is sufficiently specific about what contraband was found in the vehicle to establish probable cause and does not find any information provided regarding the items in the vehicle to be misleading or false. *See* Docket 178 at 6. Ward's objection, that some of the items found in the vehicle are not his, is better suited for trial rather than this stage of the proceedings (i.e., determining whether officers had probable cause and appropriately included reliable information in their affidavit for a search warrant). Thus, Ward's fourth objection is denied.

Fifth, Ward argues a *Franks* hearing is required because information pulled from a cell phone found in the car was "placed in the affidavit to link [Ward] to the other defendants(s)." Docket 228 at 10. The court agrees with Magistrate Judge Wollmann that the affidavit does not discuss information obtained from a cell phone from the vehicle. *See* Dockets 194 at 6; 178 at 1–11. Thus, Ward's fifth objection is denied.

8

Sixth, Ward objects to what he characterizes as Magistrate Judge Wollmann's finding that "the defendant doesn't point out the differences in testimony at hearings that the defendant alleges." Docket 228 at 11. In support, he discusses purported inconsistencies in Highway Patrol Trooper Tyler Jackson and Investigator Rose's testimony before the grand jury with regard to the key used to open the locked bags and the number of bags in the vehicle. *See id.* But the affidavit makes no mention of the number of bags, and omission of the number of bags in the vehicle is not "highly relevant" to the probable cause analysis given the presence of contraband in the vehicle and information about the conspiracy provided to law enforcement by sources of information. *See* Docket 178 at 3–6. Thus, Ward's sixth objection is denied.

Seventh, Ward objects to Magistrate Judge Wollmann's finding that the affidavit does not contain any reckless falsehoods regarding the cell phones found in the bag. Docket 228 at 12. Ward says that the "affidavit blends the language trying to make the phones seem like they all came from the same place, and ignores that they came from [the] car and the phones off his person were seized and subsequently disappeared." *Id.* The court finds the testimony of Officers Tyler Jackson and Chad Gamber about their search of the vehicle to be thorough and credible. *See* Docket 84 at 117–18, 145–46; Docket 222 at 12–14, 22–26. Moreover, the language in the affidavit is not misleading as to the location of the phones, nor does it leave the impression that the phones were all in the same location within the vehicle. *See* Docket 178 at 6. The location of the phones in the vehicle, whether on Ward's person or in other parts of the

9

passenger compartment or trunk, is not sufficiently relevant to the probable cause determination so as to make the affidavit misleading or insufficient to establish probable cause.

## CONCLUSION

Ward has failed to establish by a preponderance of the evidence that Investigator Rose's affidavit contained false statements made knowingly or with reckless disregard for the truth, or deliberately or recklessly omitted information relevant to a probable cause determination. Thus, it is

ORDERED that the report and recommendation (Docket 194) is adopted in full, and Ward's motion to suppress and request for a *Franks* hearing (Docket 161) is denied.

Dated December 8, 2023.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE