UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY WARD,<br><br>Defendant. | 5:22-CR-50073-KES-1<br><br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AND DISMISSING MOTION |

Defendant, Anthony Ward, filed a motion to dismiss the indictment for *Brady* violations based on the government's alleged "fail[ure] to preserve evidence essential to the defense." Docket 140 at 1. The United States opposed the motion and filed a response. Magistrate Judge Daneta Wollmann recommended that Ward's motion be denied. Docket 151. Ward filed objections to Magistrate Judge Wollmann's report. Docket 172. An evidentiary hearing was held on November 16, 2023. Docket 183; Docket 222. Magistrate Judge Wollmann issued a supplemental report and recommendation finding that Ward's motion should be denied. Docket 196. Ward timely filed objections to Magistrate Judge Wollmann's supplemental report and recommendation. Docket 230. After reviewing the record, the court adopts both of Magistrate Judge Wollmann's complete and well-analyzed reports and recommendations in full and addresses the issues raised by Ward in his objections to Magistrate Judge Wollman's supplemental report and recommendation.

**STANDARD OF REVIEW**

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 59 of the Federal Rules of Criminal Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Because motions to dismiss an indictment are considered dispositive matters, objections to a magistrate judge's recommendation regarding such a motion are subject to de novo review. 28 U.S.C. § 636(b)(1). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

**STATEMENT OF FACTS**

In December of 2021 and January of 2022, Pennington County Sheriff Investigator Patrick Rose received information that two African American men, including a man named Low, were staying at the Motel 6 in Rapid City and were in possession of fentanyl pills and firearms. Docket 84 at 5–7. On March 15, 2022, law enforcement received a report that Kyle Seid had suffered a nonfatal fentanyl overdose. Docket 84 at 8–9, Docket 178 at 4. Seid's girlfriend provided a phone to law enforcement officers that contained messages showing that Seid bought the fentanyl from Chavis Anderson. Docket 84 at 9. Seid admitted to purchasing the fentanyl from Anderson and an African American man named Low. *Id.* at 9–10.

On March 21, 2022, Anderson was interviewed by police following a traffic stop. *Id.* at 10. He informed police that he had returned from Colorado the previous week with two African American men named Low and Joe, who brought 1,000 fentanyl pills with them from Denver to Rapid City. *Id.* at 10–11. Anderson told police that he believed Joe was staying at the Hampton Inn along with a woman with purple hair. *Id.* at 12–14. South Dakota Division of Criminal Investigation Special Agent Jakob Whittle spoke with Hampton Inn staff, who told him that a woman with purple hair was staying in a room with an African American man with a Colorado phone number. *Id.* at 14. On March 22, 2022, law enforcement began surveilling the man and woman who Hampton Inn staff told them about. *Id.* at 15.

The surveillance operation culminated in a traffic stop on March 23, 2022. *See id.* at 147. Agent Whittle testified that he "created a ruse" to get the surveilled individuals to leave the hotel room by having hotel staff call the Colorado phone number and say that the room needed by cleaned. *See id.* at 61. A male voice answered the call. *See id.* A short time later, law enforcement observed a Ford Fiesta driven by the purple-haired woman and containing another woman pull into the Hampton Inn parking lot. *See id.* at 61–62. Law enforcement then observed Ward leave the hotel carrying two black bags and enter the Fiesta. *See id.* As the Fiesta exited the parking lot, it failed to stop completely, and law enforcement pulled the car over. *See id.* at 62–63.

During the subsequent traffic stop, Ward gave several false names. *See id.* at 138–44. Ward was arrested for false impersonation after admitting that

3

people call him Joe. *See id.* at 116, 143–44. Ward was searched incident to arrest and marijuana was found on his person. South Dakota Highway Patrol Troopers Tyler Jackson and Chad Gamber searched the vehicle and found a crystalline substance and fentanyl pills in the center console. *See id.* at 117, 145. Ward asked about some cash that belonged to him and requested to get it out of a locked container in the trunk, and Officer Gamber was able to obtain keys from Ward. *See id.* at 146. Officers Gamber and Jackson testified that they located two black bags in the trunk, which they searched. *See id.* at 117-18, 154. One of the bags was locked, but Officer Jackson was able to force it open. Inside the bag was a pistol and raw marijuana, along with a locked safe. *See id.* at 118. Officers Jackson and Gamber testified that they opened the safe with the keys found on Ward's person and located fentanyl pills, suboxone, and $2,859 in cash. *See id.* at 118, 146; Docket 178 at 6.

Photos of the two black bags in the trunk were taken. *See* Docket 189 at 53–55. Law enforcement did not remove the bags from the trunk and place them into evidence. *See* Docket 222 at 12–13, 24–25. Items placed into evidence included a quantity of methamphetamine, 157 M30 fentanyl pills, 36 suboxone doses, 11 ounces of marijuana, drug paraphernalia, pre-paid visa cards and hotel keys, some receipts, ammo, a firearm, $2,859 in cash, and the keys found on Ward, a lock, and a safe. *See* Docket 222 at 1–30. The car also contained multiple phones, five of which were entered into evidence. *See* Docket 189 at 29–30; Docket 222 at 25–26. Another phone belonging to Brittany Brazile was also seized. *See id.*; *see also* Docket 178 at 8. After Ward's

arrest, the Fiesta, with the items entered into evidence removed from it, was released to Brazile. *See* Docket 79 at 1 (traffic warning issued to Brazile); *see also* Docket 222 at 11, 22–26 (testimony from Officers Jackson and Gamber describing their rationale for removing relevant evidence from the car).

## DISCUSSION

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. When the exculpatory value is not known, however, a showing of bad faith is necessary. *See Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988). "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58. "To establish a *Brady* violation, [the defendant] bears the burden of showing that the government suppressed evidence . . ." *Masten v. United States*, 752 F.3d 1142, 1146 (8th Cir. 2014).

Ward's original motion argued that items in the car and the black bags had an exculpatory value when they were released into Brazile's custody, and that a showing of bad faith by law enforcement is not necessary in order to dismiss the case for failure to preserve evidence. *See* Docket 140 at 2, 4. Ward's objections to Magistrate Judge Wollman's supplemental report and recommendation center on the exculpatory value of items allegedly left in the vehicle and the credibility of testimony and evidence. *See* Docket 230 at 1–11.

5

In general terms, Ward alleges that additional phones, receipts, and other records left behind in the car have exculpatory value and that the failure to preserve them constitutes a *Brady* violation. *See id.* Ward does not address Magistrate Judge Wollmann's legal conclusion that a showing of bad faith is necessary where evidence is only potentially exculpatory. *See* Docket 151 at 3–4; Docket 230 at 1–11.

Ward's first objection is that Magistrate Judge Wollmann "erred by stating that the evidence rece[i]pt of Rapid City evidence is credible." Docket 230 at 1. In support of this, Ward states that "[t]he State of South Dakota in his civil proceedings states clearly that they took 6 phones of[f] his person and 4 phones from the bag." *See id.*

The court agrees with Magistrate Judge Wollmann that "the credible evidence establishes that five of Ward's phones were placed into evidence." Docket 196 at 1; *see also* Docket 189 at 29–30. Ward has not presented evidence sufficient to challenge the receipt of evidence by the South Dakota Highway Patrol, and his allegation that more phones were present in the vehicle is unsupported. Ward has also not presented evidence to corroborate his claim that in another proceeding, the State of South Dakota asserted that more than six phones were obtained during the traffic stop leading to Ward's arrest.

Even if the allegedly missing phones were lost by law enforcement when the car was turned over to Brazile, because the evidentiary value of the phones is yet unknown, evidence of bad faith is required to establish a *Brady* violation.

*See Youngblood*, 488 U.S. at 58. If there were additional phones present in the car, law enforcement would have every incentive to bring those phones into evidence, as they may have been inculpatory. Moreover, the court finds Officer Gamber's and Officer Jackson's testimony that they acted without "ill intent" in not seizing additional items from the vehicle to be credible. *See* Docket 222 at 13, 25. Thus, Ward's first objection to Magistrate Judge Wollmann's report and recommendation is overruled.

Second, Ward claims that his case is prejudiced by the loss of cash receipts from the vehicle and exculpatory information that would have been found in the Google Maps applications of the allegedly missing cell phones. *See* Docket 230 at 2. The exculpatory value of the receipts and Google Maps data is questionable if offered to refute testimony that Ward was in South Dakota during a particular period. "To support a conspiracy conviction, the government must demonstrate (1) that a conspiracy existed for an illegal purpose; (2) [Ward] knew of the conspiracy; and (3) [Ward] intentionally joined the conspiracy." *United States v. McGilberry*, 620 F.3d 880, 884 (8th Cir. 2010). The court agrees with Magistrate Judge Wollmann's finding that "Ward's presence in the State of South Dakota is not required for him to be convicted of being a part of a drug conspiracy." *See* Docket 196 at 4. Moreover, because the cash receipts and google maps data are only potentially exculpatory, a showing of bad faith is required to prove a *Brady* violation. *See Youngblood*, 488 U.S. at 58 (1988). For the same reasons discussed above, the court does not find bad faith on the part of law enforcement in not securing items allegedly present in

7

the vehicle when it was returned to Brazile. Thus, Ward's second objection to Magistrate Judge Wollmann's report and recommendation is overruled.

Ward's third objection essentially restates his second objection, and contests Magistrate Judge Wollmann's finding that the allegedly lost receipts and google maps data are not exculpatory. *See* Docket 230 at 3. Ward points out that the receipts and Google Maps data could be used at trial to impeach witnesses who testify to his presence in South Dakota, and thus must be disclosed under the *Brady* rule. *See id.*

Ward is correct that impeachment evidence that is material to the outcome of the trial must be disclosed under *Brady*. *See United States v. Bagley*, 473 U.S. 667, 676–78 (1985). But Ward overstates Magistrate Judge Wollmann's finding, which was that "the evidentiary value [of the receipts] was unclear." *See* Docket 196 at 4; Docket 230 at 3. Ward has failed to show that the receipts and Google Maps data are material, and the court finds them to be at most potentially useful evidence. Failure to preserve such evidence only constitutes a *Brady* violation with a showing of bad faith, which is absent here. *See Youngblood*, 488 U.S. at 58 (1988). Thus, Ward's third objection is overruled.

Ward's fourth objection is to Magistrate Judge Wollmann's finding that his testimony was not credible. *See* Docket 230 at 3. The court agrees with Magistrate Judge Wollmann's finding that Ward's testimony was not credible. Ward lied to law enforcement about his identity during the initial traffic stop. *See* Docket 84 at 138–43. During the November 16 hearing, Ward claimed that

one of the bags he was seen bringing into Brazile's car belonged to his cousin, but when asked his cousin's name, refused to answer. *See* Docket 222 at 100. When directed to answer the question by Magistrate Judge Wollmann, Ward again refused to answer. *See* Docket 222 at 104.

Ward's testimony about where he obtained the alleged additional phones was also not credible. Ward testified that he has six phones on his person, and that "[t]here was a bag that had two brand-new cell phones in it, and there was four additional phones in that bag." *Id.* at 68. This would equal a total of twelve phones. Ward then testified that when he was brought to the Division of Criminal Investigation evidence building, there were six phones, four of which Ward says came from the bag and one from his person. *Id.* at 68–69. But Ward later testified that when he was arrested he had "a total of six phones on [his] person [and] another four phones in the car, another four phones in a bag in the car," for a "total of 10 phones." *Id.* at 82. These accounts of the number of additional phones provided by Ward are inconsistent.

Ward also testified that he purchased the alleged additional phones from a homeless person the morning of his arrest in order to take them apart and sell them. *See id.* at 82, 96–97. Ward denied that he walked from the hotel to Brazile's car carrying two bags, claiming instead that he had been walking around near Walmart, where he purchased the phones from a homeless person, before he apparently returned to the hotel and entered Brazile's vehicle. *See id.* at 97. This account conflicts with Investigator Rose's testimony at the prior suppression hearing on November 2, 2022, that law enforcement

observed Ward leave the hotel and enter the passenger seat of Brazile's vehicle. *See* Docket 84 at 15. It also is completely incompatible with Agent Whittle's testimony at that same hearing that he "created a ruse" that prompted Ward to leave the hotel room and that he subsequently observed Ward walk out of the hotel. *See id.* at 61. Law enforcement also photographed Ward walking with two black bags to the Fiesta, and Ward outside of the car with the trunk open standing next to Brazile. *See* Docket 79 at 4; Docket 80 at 3–4.

The court finds Agent Whittle's account of how Ward exited the hotel and entered Brazile's car more credible than Ward's narrative, in which he went for an early-morning walk, purchased the alleged additional cell phones during a chance encounter, and then returned to the hotel. *See* Docket 84 at 61–63. It also finds it unlikely that Agent Whittle would perjure himself at the suppression hearing by falsely testifying about his plan to get the targets of his surveillance operation out of their room at the Hampton Inn, and about his observation of Ward exiting the hotel. The photos taken of Ward immediately before he entered Brazile's vehicle also corroborate law enforcement's close surveillance of Ward at the time he left the Hampton Inn. *See* Docket 80 at 3–4. Thus, the court finds the entirety of Ward's testimony not credible, and in particular his testimony about the alleged additional cell phones, how he obtained them, and their exculpatory value. *See* Docket 222 at 68, 82, 96–97. Ward's fourth objection is overruled.

Ward's fifth objection essentially restates his second and third objections, and argues that Magistrate Judge Wollmann erred by stating that

Ward had not shown the exculpatory value of the seven alleged additional phones, receipts, and other evidence Ward alleges was lost. *See* Docket 230 at 5–6. For the same reasons as Ward's second and third objections, Ward's fifth objection is overruled.

Ward's sixth objection is that Magistrate Judge Wollmann "never addresse[d] at all his October 31, 2022 Motion for Discovery [and that] her order on these issues on January 24, 2023 and his appeal filed on January 31, 2023 which asks not only for the bags, phones, paperwork and receipts but also for the Operational Manual . . . ." *Id.* at 7. Ward only raised this issue in his objections to Magistrate Judge Wollmann's first report and recommendation on Ward's *Brady* claim. *See* Docket 172 at 1. It is entirely absent from his initial motion to dismiss for failure to preserve evidence. *See* Docket 140-1 at 1–7. "A party raising new arguments in an objection to a magistrate's report and recommendation must show that a 'manifest injustice' would result from the district court's failure to hear those arguments." *Blaine v. United States*, 2019 WL 3423523, at *2 (D.S.D. July 30, 2019) (citing *Roberts v. Apfel*, 222 F.3d 466, 470 (8th Cir. 2000)).

The court assumes that Ward is referencing his *pro se* motion for discovery. *See* Docket 82. Denial of this motion was recommended by Magistrate Judge Wollmann both on the merits and because, at that time he made the motion, Ward was represented by counsel and no dual representation was yet authorized. *See* Docket 93. Ward appealed Magistrate Judge Wollmann's Report and Recommendation, and Judge Jeffrey Viken denied the

11

appeal and affirmed Magistrate Judge Wollmann's recommendation on the grounds that "Mr. Ward may not file motions *pro se* when he is represented by counsel." *See* Docket 106; Docket 110 at 2. Thus, because Ward's motion for discovery was in fact addressed by Magistrate Judge Wollmann's report and recommendation and Judge Viken's order, and Ward does not show that manifest injustice resulted from the district court not considering this argument that was not present in his original *Brady* motion, Ward's sixth objection to Magistrate Judge Wollmann's supplemental report and recommendation, is overruled.

## CONCLUSION

Ward has not shown any basis for dismissal under either *Brady* or *Youngblood* because he has not known shown the existence of exculpatory evidence, and he has not shown bad faith on the part of law enforcement in failing to preserve any potentially useful evidence. Thus, it is

ORDERED that the report and recommendations (Docket 151), and supplemental report and recommendations (Docket 196) are adopted in full, and Ward's motion to dismiss the indictment (Docket 140) is denied.

Dated December 8, 2023.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE